May it please the court, Cedric Hopkins on behalf of the petitioner Robert Stanford, III. I'm quickly asking this court to provide a definitive answer as to what constitutes an adequate interview of the only eyewitness to a murder. The issue in this case is that up until this point, the lower courts have used the trial attorney statements that were provided to me in an email regarding his brief, sort of passing the context with that witness as a basis to either label his inaction as strategy, or get beyond or satisfy the strictly deficient performance problem. My client's position is that the failure to formally take the witness's statement and the failure to reserve that statement in any manner... Okay, so what your case said. Now, he did contact the witness, correct? No, it's actually the reverse. The witness contacted him. Well, but there was conversations. Yes, in between court hearings, yes. Okay, well, how many of those? Two, at least two. At least two, maybe three. He mentioned three contacts. One was a phone contact, where the witness called his office, and then he saw him in court on two separate occasions. Right, and the witness kind of laid low for a while, because the witness maybe had, I don't know, read a little grammar or a Barbary book on, you know, you were in the car, and maybe that won't work out too well for you, or something like that. That's correct, Your Honor. And the way it worked was, it appeared, and his name is Sheik Ajimu, the witness. Ajimu would, in the context that he did have a trial attorney, he was concerned about, one, how much prison time my client was going to get, so his risk, what he could see, it's a few at a time. Well, he could have been viewed as a complex, or... Yes, I believe, I mean, after a while, I think that's maybe why he even did go away. Right, so how would he have been able to testify, even if your investigation wouldn't have taken the fifth? Well, he might have judged, and that's something that's to be determined, as far as what my issue is, whether or not this trial attorney was adequately prepared. But you're not going back to any anecdotes to prejudice? But you seem to be attacking that you didn't give a written statement. That seems to be, you're putting a lot of weight on that. What's your best, you know, I mean, what if I spent two hours talking to someone, and, you know, I mean, I investigated all of that, but I didn't take a written statement. Is there some case out there that says, under Edgar Review, you've got to take a written statement? I think it's... Well, that can be a yes or no, but you've got a case out there that says you have to have a written statement, even though you... No, not a written statement, Judge. But you, that's something you're putting a lot of weight on, right? I think it's, I mean, it just kind of flows if you're doing a reasonable investigation, what you're required to do. I think at some point you would take a note, or there would be some type of recording of what that statement's going to be, especially considering it's a murder case, and the trials often happen a long time after you start the investigation. Do you want to preserve that through your applications later on? So I think what you're getting to is, first, where's the line? Because we know a complete effort to investigate this ineffective assistance accounts on a criminal case. And here we have some investigation. Right. And how do we draw the line on exactly, you know, where do we draw the line? Where do our cases draw the line when he, I mean, how thorough does the investigation have to be? I mean, it's clear he knew that this witness was in the car and might have provided a different story that could have exonerated your client. Or just supported your client's story. Exactly. And I think that's what my first statement was. I'm asking this court to provide a definitive answer as to what does constitute an adequate investigation in keeping in mind where this is the only eyewitness. Because in the opening statements, the prosecutor said that there were no eyewitnesses to this. The defense attorney didn't object. So to answer your question, where do we draw that line? Counsel, Judge Gould, if I didn't interject. On that question, wouldn't we have to ask in a TPA case where the Supreme Court has drawn that line? And as the Supreme Court ever in any opinion suggested them to be adequate, the investigation has to be done a certain way. No, Your Honor. As far as my research goes, they draw the line. I mean, it's a reasonableness. It's either a reasonable investigation or a decision not to investigate that is reasonable based on what the trial attorney knew at the time. And in this case, the issue, the Strickland case talks about making informed strategic decisions. And before we get to strategic, we have to be informed. But even, okay, but you're saying, okay, even if this witness supports your client's statement, the attorney expresses concern over the fact that your client's statement was inconsistent with physical evidence at the location. And so, the attorney said not only that I don't think it was exculpatory, but I think it would cause more problems and would be damaging. So, that creates a basting process. The physical evidence was inconclusive. The forensic experts said we can't determine how far away the gun was from the victim when the gun was fired. My client was claiming that there was a struggle for the gun. Yeah, but they said things in the evidence about when you're, if you're right at close range, whether there's stifling or that sort of thing, or the gunshot residue, all of those types of things, right? They went over that. No, I can't say exactly, but they did give some parameters that were somewhat inconsistent with, and your client had some inconsistencies in his own story, because initially he changed it several times, right? He didn't lie in the beginning. Well, but we don't really know when someone lied if they tell different stories. I don't know, we just know they're different stories. Right, he told my story at the beginning. The detective told him that we have a video camera of it, and then he changed his story to what he actually touched the client to. I mean, what we do know is inconsistent statements aren't what any lawyer hopes for. Right, but they often see. And so, and I think that's why, if you look at Ajmu's affidavit that says that he was in the car and he defended, that's my client as well, and then I think the most telling aspect of it, you mentioned prejudice, is the jury's repeated questions to hear from Ajmu about what Ajmu saw or did in this case. And so I think that goes to the prejudice that Ajmu had. Well, you can't really, there isn't a case that says you confirmed that. I mean, I've lived in a car room for 20 years, and I heard when I was handling cases and when I was a judge, and if someone's name is mentioned, the jury always wants to know, well, why don't I get to hear from that person? Right. But that doesn't mean that they were entitled to hear from that person. It doesn't even mean sometimes that there isn't an instruction that can be given that says not calling that person. And it doesn't mean that there couldn't have been a strategic excellent reason. Right, but even the district court below said that it's likely the jury drew a negative inference from not hearing from him, and usually they may ask one time, can we hear from this witness, and then that's it. This jury asked at least, I think it was four or five times with it, and if I could reserve the last minute, I would do it again. Good morning. Good morning, Your Honors. My name is Adele Ponce, and I represent the state of Arizona in this case. This court should affirm the dismissal of denial of Petitioner Savio's petition for two reasons. First, the state court's determination that Petitioner's counsel was not an offender, was not objectively unreasonable under Edna, which is the standard that a petitioner must meet. And second, Petitioner can't establish he was prejudiced in light of the evidence that was put before the trial court and in his PCR proceedings. The state court's denial of Petitioner's ineffective assistance of counsel claim was not an unreasonable application of the Strickland standard. The decision not to call a witness or not to pursue a particular witness rests within the professional judgment of an attorney, and a tactical decision not to do this. I had that little interplay with counsel over the jury questions. Yes. Let me take the other side and say it will help the jury questions tend to show the jury joint inference that a Chavez testimony would have been harmful. No, they don't suggest such an inference. The jury was instructed in this case that the state had the burden of proof and that the petitioner is presumed innocent. Strickland says that we presume that the jury follows those instructions. The fact that they're inquiring about why a witness wasn't called to testify doesn't create any such presumption, doesn't allow us to ask into their determinative or deliberative process. And I think I'd also point out to the court that while the jury did ask multiple questions about how to move, they asked those questions of both the police officer who testified about the petitioner's statement in interview and the petitioner when he testified. And so they're asking the police, why didn't you, or did you try to reach Ajamu through the petitioner's phone? And they asked the petitioner, why haven't you called Ajamu to testify? We can conclude, based on those questions, that they drew a particular inference against the petitioner. Well, and if Ajamu had claimed the theft, then that wouldn't, you know, no one could have compelled Ajamu to testify. Well, right. And that goes to, you know, my second point, the greater issue of prejudice, that the petitioner can't establish prejudice in this case because he can't establish the reasonable likelihood that Ajamu would have come to testify and would have testified as he provided in his affidavit. That affidavit was written with the benefit of the petitioner's testimony, whereas during trial the rule of exclusion was in place. And so he wouldn't have had the benefit of that testimony when he testified. We also have a statement from the petitioner's counsel indicating that when he spoke to Ajamu, Ajamu's statement didn't match that of the petitioner's, which was changing frequently. Well, do you need to show that the trial counsel's actions were part of a reasonable trial's strategy? Do you have that word, or who has that word? So the petitioner has to show that the state court's determination that the lawyer was not deficient was objectively unreasonable or was an objectively unreasonable application of Strickland. And so it's his burden to show that no reasonable jurist would have reached the conclusion that the state court reached in this case. And based on the evidence the petitioner presented to the PCR court himself, his statement is from his attorney saying that he spoke to the witness more than once, that he determined that the witness wouldn't be helpful because his statement contradicted the petitioner and because he was concerned about his own culpability. That right there is a tactical determination that this witness would have contradicted his client or further undermine his credibility. I mean, I don't think the petitioner can't meet his burden. The question is whether the state court reasonably determined that the investigation that, as counsel did undertake, was reasonable, was not deficient. Did he go far enough in finding out what the story was? Right. And the petitioner falls counsel for not conducting what he calls a complete or a formal interview. But the petitioner doesn't deny that he spoke, doesn't deny his counsel's statements that the statement, or the information that he obtained from the witness contradicted his own statements, that he was giving at the time. I mean, the petitioner can't overcome the presumption of reasonableness in Strickland that applies to a defense counsel by questioning the degree of his investigation. I mean, I think what the petitioner is really saying here is that his attorney should have continued to pursue and question Adjomou because eventually his statement would have matched the statement of the petitioner. Strickland doesn't require an attorney to continue investigating and pursuing a witness until that witness's statement matches the defendant's statement. I was curious when counsel for the petitioner made the comment, said, well, we want this court to say what you have to do in an investigation. Let's just say hypothetically that this court said more should be done. Would that in any way affect the reasoning of the state courts back at the time that the petitioner was denied? Well, no, and it's really not precisely for this court to set the standard. I mean, under AEDPA and under the doubly deferential review that applies, the petitioner has to show that the state court's determination was contrary to established Federal law. Under AEDPA, that's the Supreme Court authority, and so as the court pointed out, he would have to show that the state court's determination essentially was contrary to Strickland. And Strickland says it posts a duty on counsel to conduct reasonable investigations. It also says that counsel can make a decision not to conduct certain investigations and that those decisions will be made based in part on what the client is telling the attorney. Here, the attorney's statement provides that his client was giving him multiple accounts of the shooting at the time, and that when he spoke to the witness, their accounts didn't match, and he determined that this testimony from this witness would hurt the petitioner's case and further undermine his credibility. Thank you. I think this court has no further questions. Has the court two? I have one question. Does the record tell us if there was any preexisting relationship between the witness, Ajamu, and the felon, Stanford, prior to being together that night? The record does indicate, actually, that the petitioner, at the time he gave his statement to the police, called Mr. Ajamu his best friend. This is something that he denied when he testified at a trial, but it was referenced by the prosecutor in his closing argument when he was talking about the ways in which the petitioner was contradicting himself. And Your Honor's correct to highlight this because, again, this goes to the issue of prejudice. There was a tremendous amount of evidence and testimony that contradicted the petitioner's account of what happened in this case, and Mr. Ajamu's testimony, even presuming that he had come to testify precisely as he stated in his affidavit, which I think is questionable, you know, given that he testified, that he made this statement five years after the fact with the benefit of petitioner's testimony. The fact that he, that the petitioner did call him his best friend, that he wouldn't tell police how to contact him undermined, I think, his credibility and the extent to which we can, to which the petitioner can show a reasonable likelihood that the jury would have found in his favor with that testimony and with that statement. Particularly in light of the evidence in the trial that contradicted the petitioner's account, when the petitioner was seen having a confrontation with the victim and left the parking lot, was seen circling five to six times, he denied both the fact that he had the confrontation and the fact that he was circling the parking lot six times, even though there were witnesses with no, you know, comparable bias to Mr. Ajamu, who provided that testimony. He claimed he took his pistol out from under his seat and placed it in his lab and was driving around this way because he didn't have a permit to carry a concealed weapon. And the physical evidence in the case really contradicted his account of having shot the victim from inside the car while the victim was holding on to the gun. As the court pointed out, there was no stippling on the victim's skin. There was no singeing of his shirt. All the bullet casings were found in the parking lot, and there were strike marks on the victim's car and a building nearby. There was no bullet inside the victim himself, and there was no damage inside his car. So there was no evidence to confirm his account. I think had Ajamu come to testify as he claimed he would have, really bolstering that particular account that the petitioner gave, he can establish a reasonable likelihood that the jury would have reached a different conclusion about this evidence with his police, the person he called his best friend in his police interview, providing testimony that conformed to his account. Well, the reason, my understanding is the reason for putting the person that was shot in the car, that it would be more of a self-defense type of thing, as opposed to if the person was outside of the car at a distance, and that person was not armed, that would go against any claims of self-defense, right? That's correct. I mean, his claim at trial was that the victim had jumped on his car and then had leaned into his car and tried to grab his gun. I think the petitioner stated just now that he didn't change his account from the time of his police interview to the time he testified at trial, but there was some variation, and it was highlighted by the prosecutor. And one of those is that he began claiming at trial that there was a struggle over the gun, where they were moving the gun back and forth. That was a detail that he added to alter his account. Well, listen, first of all, am I remembering, was there some testimony about if it had occurred, as he said? What type of gun was it? It was a .45, but it was a revolver, right? Yes. And so if you were holding the revolving part, it wouldn't fire, right? Was there? Well, that's correct. I think there was some kind of pin at the top that would automatically sort of pull back, and I think there was testimony indicating that if the victim had been holding the gun the way the petitioner described, he wouldn't have been able to shoot it three times because it wouldn't have pulled back in the way that the gun is supposed to. I mean, there was a great deal of testimony that countered his account of the way that this happened, and I think the point is that the petitioner can't establish prejudice under a reasonable likelihood of a different outcome, even if Mr. Hodge would have come to testify, as he claimed he would have in the affidavit that he provided. Thank you. I think you did well over your time. Thank you, Your Honor. That was three minutes. Thank you. Mr. Hopkins, we'll give you a couple minutes. Just to do that last point, Your Honor, as far as the gun goes, I think it was a semi-automatic, because they were analyzing to where the shell casings were inside or outside of the car, and so it's the kind that slides back, and if the hand's on it, it can't slide back and fire again, is the way that the testimony was. I just want to address a couple quick points that the opposing counsel made. The saying that Hodge knew had the benefit of the testimony, I mean, it's a little misleading. I'd be not misleading. It's not misleading when the full story's not there. I found Hodge, and it took a long time, several months, if not a year, to find him, and then he was asking me what happened with the case, and then I interviewed him and put together the affidavit. So he didn't read the testimony, or he wasn't at trial when he made that affidavit. And also, the issue of the jury questions coming in, one of the specific jury questions was, why is the defendant not on the line, not caught? Hodge was a witness, and that, I think, is what caused the district court below to say that the jury likely drew a negative inference from that. And the strategy in this case was self-defense. The defendant justified that by not using Hodge. Well, let's take that hypothetically, though. Okay, so they take a negative, but what if the reason for not calling Hodge was that Hodge was going to say that he killed the victim at a distance and there were no defenses? So then are you going to say that the attorney had to call him as a witness? No, and that's what you would have to think, is that Hodge was going to say that this is basically a first-degree murder or second-degree murder and I can't give a statement for him. But in the e-mails, and that's all we're dealing with here. We're not dealing with an evidentiary hearing where the attorney testified. But in the e-mails that were provided to me, the trial attorney said Hodge really first indicated he wanted to be a witness for Robert if he could give a statement. And then he didn't give a statement. I mean, if Hodge was to be a witness and it follows that he's going to give favorable testimony. Well, a witness could think they were giving favorable testimony, but as a lawyer, you have a, you know. Right. You know, like the government, I'm here to help, or I'm a witness, I'm here to help. Then what the witness says is totally unhelpful. The attorney has to make an analysis of that, right? Yes, if you do have Hodge, you want to testify to that he actually punched this guy in the head to get him out of the vehicle. So I think that that goes to whether or not, and I'm sorry, I'm over. I'm going to ask a question. So did Hodge ever prosecuted in connection with this? No. No. Is the statute of limitations for prosecuting for this? Under an accomplished liability of murder, I don't think so. Murder, right. Right. It's murder, right? Yeah. There is no statute. Yeah, right. It's not murder. All right. Okay, so I'm going to ask that you print these. I'm sorry, are you printing? No, go ahead. Yeah, you can print the petition. Thank you. Thank you very much. All right, Stanford versus Rice is submitted. And we'll take a U.S. versus civilian.
judges: Wardlaw, Gould, Callahan